LYMAN BELKNAP & others *vs.* NATIONAL BANK OF NORTH AMERICA.

A merchant who sends by his clerk to the post-office, to be mailed, a sealed letter containing a bank check drawn by himself payable to A. B. or order, is not guilty of negligence which will render him liable on the check in the hands of a holder in good faith for value, to whom the clerk, after abstracting it from the letter, passes it altered by forging the words "or bearer" after "A. B." and before "or order," and obliterating the latter words.

CONTRACT to recover $701.49 deposited by the plaintiffs with the defendants. Answer, that the defendants duly paid upon checks of the plaintiffs the amount sued for.

At the trial in the superior court, before *Morton,* J., it was not disputed that the defendants paid the amount on two checks, signed by the plaintiffs, the first of which was in form substantially as follows, and the second precisely resembled it, except in the name of the payee, (Edward Williams,) the number of the check, (10,982,) and the amount thereof ($371.86) :

" The National Bank of North America.

$[329.63.]     Boston, [June 12,] 1867.

Pay to [Alfred Boyden or bearer] -or order- [Three Hundred Twenty-Nine] Dollars, [Sixty-Three] Cents.

No. [10,980]     [Lyman Belknap & Co." ]

*[margin: "Lyman Belknap & Co." [Internal Revenue Stamp.]]*

Each check was filled out upon a lithographed blank, and those portions which were written by hand in ink are designated by being inclosed within brackets in the foregoing copy. Across the lithographed words " or order " in each check was drawn a broad line with a lead pencil.

The only question raised was, whether the defendants were justified in making payments on these checks; and there was evidence tending to show facts as follows :

One of the plaintiffs signed six such lithographed blanks, on June 13, 1867, and left them in charge of Wilde, the plaintiffs' book-keeper, to be filled up and sent by mail to parties living at a distance, in settlement of accounts due from the firm. Wilde handed them, together with the six statements of account, to Bryant, a clerk twenty-one years old, who had come into the plaintiffs' employment on June 10; and directed Bryant to fill them out to correspond in date and amounts with the accounts, and make them payable to the respective orders of the parties to whom they were intended to be sent. Bryant filled them out accordingly, and returned all the papers to Wilde, who examined the checks, compared them with the accounts, found them correctly drawn, placed internal revenue stamps upon them, which he cancelled with the initials of the firm and the date, and then

put them, with the accounts, into envelopes, which he addressed to the respective payees, sealed, and delivered to Bryant, near evening, to take to the post-office.

The plaintiffs, who were commission merchants, had kept a bank account with the defendants for six or seven years ; and drew on the defendants, and mailed to their consignors, as many as two or three thousand checks each year, using always the same lithographed form, and invariably drawing them payable to order, for the purpose of procuring receipts upon them. In drawing money for their own use, or to pay notes, the plaintiffs frequently drew checks payable to " notes payable or order," but in all such cases some one of the plaintiffs personally, or their book-keeper, received the money from the bank.

All of the six checks but the two in question were returned to the plaintiffs in due course of business, indorsed by the parties to whom they were mailed. The payees of these two, within a few days after June 14, gave notice to the defendants that they had not received the remittances due to them on their accounts ; whereupon the plaintiffs went to the defendants' bank and there found the two checks, altered by the insertion, in ink, in Bryant's handwriting, of the words " or bearer " after the names of Boyden and Williams, and by the cancellation of the words " or order " by the line drawn by lead pencil ; and the teller of the bank, being then asked, could not tell to whom he had paid these two checks, or either of them. Bryant came to the plaintiffs' place of business early on the morning of June 14, and about ten o'clock went away " to be gone for an hour or two," and never came back.

Much evidence, which, by the decision of this court, has become immaterial, was introduced on the question whether the defendants' teller used due care in paying the two checks.

On the whole case, the plaintiffs requested the judge to rule as follows : 1. " That, if the checks were altered by erasing the words ' or order ' and inserting the words ' or bearer,' after they were executed by the plaintiffs, and without authority from them, the checks were void, and the defendants could not set up a payment under them to defeat the plaintiffs' claim, unless the plaintiffs were guilty of negligence with respect to them.

2. " That, if the checks were altered by erasing the words ' or order,' and inserting the words ' or bearer,' and the alteration was apparent on the face of the instruments, it was the duty of the defendants, before paying the checks, to ascertain whether the alterations were authorized ; otherwise they would run the risk of their being unauthorized.

3. " That, if the checks were taken from the letters in which they were inclosed, and the alterations were made with a fraudulent purpose, after the execution of the checks, by a clerk of the plaintiffs, who was merely employed and authorized to take the letters containing the checks to the post-office, the plaintiffs were not responsible for his fraudulent acts, although he may have been employed to fill in the body of the checks under the direction of the book-keeper who had charge of the filling in of the checks.

4. " That, if the checks were altered by cancelling the words ' or order,' and inserting the words ' or bearer,' without the au-thority of the plaintiffs, and after the plaintiffs had signed the checks, such alteration was a forgery, and the bank paid the checks at its own risk."

The judge declined so to rule ; and instructed the jury " that, if the words ' or bearer' were written in the checks before they were sent out by the plaintiffs' book-keeper, the bank was jus-tified in paying the checks, but if the words ' or bearer' were inserted after the checks were issued, it did not necessarily fol-_ow that the plaintiffs would not be held on the checks ; that if the checks were signed in blank by the plaintiffs, and given to Wilde to be filled up, and he delivered them to Bryant, and directed him to fill them up, and they were filled up by him, leaving a blank space after the names of the payees and before the printed words ' or order,' and they were then issued in that form, and he, Bryant, afterwards inserted in the blank space the words ' or bearer,' in the same handwriting as the rest of the written part of the checks, and if the jury should find there was nothing in the appearance of the checks, when presented to the teller for payment, to excite any suspicion, or which ought to have excited any suspicion on his part, or to indicate that the

checks had been altered after they were issued, and he exercised due care in paying them, then the bank would be protected in making the payment; that, as matter of law, the mere fact of the printed words 'or order' having been erased, the words 'or bearer' being in the checks, would not in itself alone be such a suspicious circumstance as would deprive the bank of this defence, but that that fact, with the other facts in the case, might show want of due care on the part of the teller;" and the jury were instructed on this point "to take into consideration the fact of the erasure of the words 'or order' and all the other facts in the case, and if, upon all the facts, there was anything suspicious in the appearance of the checks when presented for payment, or which ought to have excited suspicion, or if the teller did not exercise due care, then the fact that the plaintiffs had been careless in respect to the checks would not relieve the defendants from liability; and further, that, if there was anything suspicious in the appearance of the checks, or which ought to have excited suspicion, or if there was any want of due care on the part of the teller in paying the checks, then any practice, at the banks in Boston, to pay checks to persons presenting the same, if known to the teller, or identified by some person known to him, though there was such identification upon payment of the checks in question, would not protect the bank in paying the same."

The jury found for the defendants; and the plaintiffs alleged exceptions.

*G. O. Shattuck & J. B. Thayer,* for the plaintiffs.

*J. D. Ball,* for the defendants.

CHAPMAN, C. J. It appears that the plaintiffs signed several checks drawn upon the defendants, payable to [blank] or order, and left them with Wilde, their book-keeper, to be filled up and sent by mail to several parties living at a distance, for the payment of debts owed to them severally. Wilde handed these checks to Bryant, the clerk, to be filled up with the proper dates, names and amounts, leaving them payable to the order of the several creditors. Bryant did so, and then returned them to the book-keeper, who examined them, found them correct, stamped them, cancelled the stamps, placed them, with the accounts to

be paid by them, in envelopes, sealed the envelopes, and addressed them to the proper persons.

It is not necessary to consider the question whether any part of the plaintiffs' conduct thus far was careless; for their confidence was not abused, but everything had been properly done The case is not different from what it would have been if they had given the blanks to the clerk to fill up before they signed them, and had signed them after they were filled up, stamped and returned to them.

The sealed letters were delivered to the clerk to carry to the post-office. We cannot assume, as is implied in the instructions, that it was careless on the part of the plaintiffs to send sealed letters to the post-office by a clerk, although the clerk knew their contents. For he could not obtain access to the contents without committing a crime. The checks were not intrusted to him as in the cases of *Putnam* v. *Sullivan*, 4 Mass. 45, or *Young* v. *Grote*, 4 Bing. 253.

He obtained possession of the checks surreptitiously; and, by the erasure of the words "or order," and inserting the words "or bearer," he committed a forgery; for it was a fraudulent alteration of the instruments in a material part, whereby a new operation was given to them. Before the alteration, the checks could only be paid to the creditor or his order, and such payment would discharge the debt which each check was designed to pay. After the alteration, each check was payable to any one who should present it. Such an alteration would vitiate the instruments, even in the hands of a *bonâ fide* holder for value. *Wade* v. *Withington*, 1 Allen, 561. The case was presented to the jury upon the question of the diligence or fault of the defendants, and the court are of opinion that this was an erroneous view of it. *Exceptions sustained*