STEADMAN, Associate Judge,
dissenting:
Ezpressio unios est exclusio altenus may encapsulate a result, but it also encapsulates a common-sense understanding of human thought and expression. Here, the statute focuses upon only one circumstance in which a joint[1] adoption may take place; viz., a petition by a married couple where both spouses must join. D.C.Code § 16-302 (1989 RepL). To that provision, one exception is provided; viz., where either the husband or wife is the natural parent of the prospective adoptee. Id. Where the legislature has concretely provided for a regimen for joint adoption, I think that an expansion of the regimen to other forms of joint adoptions should only be made by the legislature.[2]
Appellants draw our attention to a provision contained in the general rales for interpretation and construction of District statutory law that the singular includes the plural. D.C.Code § 1-230 (1992 RepL). But a marked difficulty with such an expansive interpretation of the adoption statute is in discerning any limiting principle within the statutory language that would not open up adoption to multiparty adoptions without regard to number.[3] Further, I fail to discern any convincing reason why the legislature would target adoptions by married couples, including a mandate of joint adoption, and yet leave completely unmentioned and untrammeled all other forms of joint adoptions, especially by those in a “committed personal relationship” — leaving the latter for example free to seek to adopt jointly or not as they saw fit.[4] Finally, the apparent legislative intent to limit joint adoptions to married couples gleaned from the statute itself would seem to be supported by consideration of the broader background of then extant legislation on related subjects; for example, the distinctions drawn between legitimate and illegitimate children[5] and the criminalization of eonsen- *867 sual fornication and sodomy.[6]
I respectfully dissent.[7]

. I use the word “joint” here in its sense of applying to “two or more" entities (here, adopters). See Webster’s Third New International Dictionary 1219 (1981).

. Adoption is a purely statutory matter, not recognized at common law.

. In a sense, it may well be in the “best interests” of the child to have three or more "parents” in terms of financial security, rights of inheritance, and like considerations, but in my judgment, it would be utterly unwarranted to press the legislative intent so far. Cf. Reynolds v. United States, 98 U.S. 145 (1878) (legislature may constitutionally outlaw polygamy).

. I see nothing helpful in that regard in Lee v. Wood, 181 N.E. 229 (Mass.1932), cited to us at oral argument. I am not unaware of the general guidelines in D.C.Code § 16—309(b), but since they apply to all adoptions, single or joint, they provide no answer to the absence of specific provisions relating to joint adoptions other than by married couples.

. See, e.g., Di Giovanni v. Di Giovannantonio, 98 U.S.App.D.C. 147, 148 n. 1, 233 F.2d 26, 27 n. 1 (1956) (under D.C.Code §§ 18-107 (1951) illegitimate children could inherit from their mother only).

. See D.C.Code § 22-3502 (1951) (sodomy), repealed by D.C.Act 10-385, 42 D.C.Reg. 53, 62 (Jan. 6, 1995); D.C.Code § 22-1002 (fornication).

. With respect to the “cut off” provision of D.C.Code § 16-312(a), I think that, however it may operate in other contexts, the legislature cannot have intended to permit the accomplish *868 ment here by such indirection of that which it had not provided for directly.